UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGARET WALGRAF,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

CASE NO. C16-1105-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Margaret Walgraf proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1973.[1] She completed high school and a dental assistant vocational program, and previously worked as a dental assistant, orthodontic technician, medical

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

clerk, and dancer. (AR 35, 59.)

Plaintiff filed a DIB application in July 2013, alleging disability beginning January 14, 2010. (AR 167.) She remained insured for DIB through December 31, 2011 and, therefore, was required to establish disability on or prior to that "date last insured" (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. Her application was denied at the initial level and on reconsideration.

On February 11, 2015, ALJ Gordon Griggs held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 27-64.) On March 30, 2015, the ALJ issued a decision finding plaintiff not disabled from January 4, 2010 through her December 31, 2011 DLI. (AR 12-21.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 2, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's fibromyalgia, history of postpartum polyarthralgia, cervical degenerative disc disease, periodic cluster headaches, opioid dependence, benzodiazepine dependence, anxiety disorder, and adjustment disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a

listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following limitations: she can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and can frequently reach, handle and finger; she is limited to occasional exposure to temperature extremes, vibration, pulmonary irritants, such as dust, fumes, odors, gases, and poor ventilation, extremely bright light (i.e., more than normal office lighting levels), sustained and persistent loud noise, and hazardous conditions, such as proximity to unprotected heights and moving machinery; and she is able to routinely perform simple tasks and familiar detailed tasks once learned. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a medical clerk.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as a parking lot cashier, office helper, electronic accessories assembler, charge account clerk, food and beverage order clerk, and document preparer.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial

evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly consider the opinions of State agency medical consultants, her testimony, and the lay witness statements. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In October 2013, non-examining State agency psychological consultant Dr. Carla van Dam diagnosed plaintiff with affective, anxiety-related, and somatoform disorders. (AR 82, 85-86.) She assessed moderate limitations in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; and complete a normal workday and week without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 85-86.) She explained in narrative from: "[Claimant] is able to complete simple and more complex types of work, but her concentration and ability to persist would be affected by her excessive focus on pain for which she self-limits her functional abilities. Once in a routine, she would likely improve w/ consistency." (AR 86.) Dr. van Dam also assessed a moderate limitation in the ability to respond appropriately to changes in the work setting, explaining: "Her coping skills are somewhat diminished in light of how she has been handling the diffuse joint pain she experiences which causes her to curb her functional status due to her perception of limitations from pain rather than

1  due to actual physical restrictions." (*Id.*) She otherwise found plaintiff not significantly limited.

2  In March 2014, non-examining State agency consultant Dr. Patricia Kraft issued an opinion

3  identical to the opinion of Dr. van Dam. (AR 96, 99-100.) Both of the opinions, although rendered

4  almost two years and more than four years after the DLI respectively, assessed the period from

5  just prior to the alleged onset date to the DLI. (AR 82, 99.)

6  The ALJ did not describe the diagnoses or functional limitations opined by Drs. van Dam

7  and Kraft. The ALJ did, however, assign great weight to their opinions, finding them consistent

8  with the treatment record prior to the DLI. (AR 19.)

9  Plaintiff avers error in relation to the somatoform disorder diagnosis, defined by the

10 physicians as "physical symptoms for which there are no demonstrable organic findings or known

11 physiological mechanisms," as evidenced by "[u]nrealistic interpretation of physical signs or

12 sensations associated with the preoccupation or belief that one has a serious disease or injury[.]"

13 (AR 82, 96.) Plaintiff does not assign error at step two. She argues the ALJ purported to give

14 great weight to the opinions of Drs. van Dam and Kraft, but did not consider or even mention the

15 somatoform disorder diagnosis and associated limitations and, therefore, improperly rejected the

16 opinions of these non-examining physicians without "reference to specific evidence in the medical

17 record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). She maintains this error

18 implicated the assessment of her testimony and the formulation of the RFC.

19 An ALJ need not provide reasons for rejecting a physician's opinion where the ALJ

20 incorporates the opinion into the RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23

21 (9th Cir. 2010). The ALJ's findings need only be consistent with, not identical to limitations

22 assessed by a physician. *Id. See also Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996,

23 1006 (9th Cir. 2015) (ALJ may also "rationally rely on specific imperatives regarding a claimant's

ORDER
PAGE - 5

limitations, rather than recommendations."); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). The "final responsibility" for decisions such as the assessment of an individual's RFC is reserved to the Commissioner. Social Security Ruling (SSR) 96-5P.

The ALJ in this case did not reject the opinions of Drs. van Dam and Kraft. He assigned the opinions great weight and found plaintiff able to "routinely perform simple tasks and familiar detailed tasks once learned." (AR 16.) This RFC is consistent with the opinion that plaintiff would be able to perform simple and more complex types of work and that, while her concentration and persistence would be affected by her excessive focus on pain and resulting self-limitation, "[o]nce in a routine, she would likely improve [with] consistency." (AR 86, 100.) It likewise incorporates and is consistent with a moderate limitation in responding appropriately to changes in a work setting, which resulted in "somewhat diminished" coping skills. (*Id.*)

Plaintiff denies there is evidence the ALJ ever considered her somatoform disorder, and asserts the alleged incorporation of the limitations into the RFC reflects an improper post hoc rationalization. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") The Court disagrees.

"Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoted sources omitted). The agency must "set forth the reasoning behind its decisions in a way that allows for meaningful review[]" because the Court may only affirm a

ORDER
PAGE - 6

decision to deny benefits on grounds invoked by the agency. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoted and cited sources omitted).

Ideally, the ALJ would have at least outlined the opinions of Drs. van Dam and Kraft. Yet, it does not follow from that omission that the ALJ did not fully consider this opinion evidence or that the omission reflects reversible error. *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the Court looks to "the record as a whole to determine whether the error alters the outcome of the case.")

It should first be noted that, whatever the diagnostic cause, the question before the Court is whether plaintiff has established error in the ALJ's consideration of the functional limitations assessed by these physicians. However, because Drs. van Dam and Kraft explicitly associated the functional limitations with the somatoform disorder diagnosis in their narrative explanations, the consideration of this opinion evidence necessarily included both the diagnosis and functional limitations. (*See* AR 86, 100 ("excessive focus on pain for which she self-limits her functional abilities" and "caus[ing] her to curb her functional status due to her perception of limitations from pain rather than due to actual physical restrictions."))

It is further readily apparent the ALJ relied on the opinions of these nonexamining physicians in formulating the RFC. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Indeed, the only other medical opinion of record does not identify *any* limitations in plaintiff's mental impairment-related functioning. Dr. Karen Ni, a psychiatrist, performed a consultative examination of plaintiff in November 2010, shortly before the alleged onset date. (AR 344-48.) She diagnosed adjustment disorder (depressive symptoms)

and inflammatory condition. (AR 348.) In addressing the prognosis, Dr. Ni opined the depression would likely continue if plaintiff did not have adequate anti-depressants and therapy, but it was not "profound to the point" she could not function, and stated plaintiff "still takes care of herself and her children adequately, although perhaps not ideally[,]" and "should be able to work if her inflammatory symptoms were better controlled." (*Id*.) In assessing plaintiff's limitations, Dr. Ni opined: "Good ability to reason, good memory, above average social skills." (*Id*.)

The State agency records accounted for Dr. Ni's opinions: "11/6/10 Opinion of being able to work from a psychological standpoint is essentially adopted here as her [psychiatric] condition does not look to rise to the level of being considered totally disabled." (AR 83, 97.) The ALJ also gave great weight to Dr. Ni's opinion, finding it consistent with the treatment record, plaintiff's independent daily activities, and the treatment record after the DLI. (AR 19.) The ALJ nonetheless found plaintiff limited by her psychological impairments and, in so doing, clearly considered and relied upon the opinions of non-examining physicians Drs. van Dam and Kraft over that of examining psychiatrist Dr. Ni. *But see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (generally, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician).

Plaintiff denies the RFC adequately accounts for the opinions of Drs. van Dam and Kraft. She construes their opinions to hold that she "would need a period of time to adjust to her new work routine before her attendance was consistent[,]" and states the fact "an employee performs simple or well learned tasks does not mean that the work is unchanging." (Dkt. 14 at 2-3.) However, the ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

ORDER
PAGE - 8

Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff offers one interpretation of the opinion evidence, but does not demonstrate the ALJ's interpretation was not rational. Because the ALJ's consideration of this and the other opinion evidence of record has the support of substantial evidence, it will not be disturbed.

## Plaintiff's Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[2] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

---

[2] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the March 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 9

In this case, the ALJ provided specific, clear, and convincing reasons for not fully accepting plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms.

A. <u>Medical Evidence</u>

The ALJ found the medical evidence did not substantiate plaintiff's allegations of disabling limitations prior to the DLI. (AR 17.) He also found the limitations assessed consistent with the objective medical findings, opinion evidence, and plaintiff's activities, and that the record did not support greater limitations. (AR 19.)

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p. "Contradiction with the medical record is [also] a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161.

Plaintiff avers error in the ALJ's failure to evaluate her symptoms in light of her somatoform disorder, which causes her to "experience authentic suffering that limits her functioning even in the absence of a medical reason for that suffering." (Dkt. 9 at 5 (citing *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 311 (5th ed. 2013)). The Commissioner observes that plaintiff did not attribute any of her symptoms to a somatoform disorder, instead pointing to, among other things, her pain and fatigue as the cause of her disability. (*See* AR 17.) (*See also* AR 32-33, 42-57 (neither plaintiff, nor her counsel mentioned the somatoform diagnosis or attributed her limitations to that condition at hearing).)

Again, the Court is not persuaded the ALJ failed to consider the opinion evidence from Drs. van Dam and Kraft. Nor is the Court persuaded that, considering the somatoform disorder diagnosis and associated limitations at issue, the ALJ was necessarily precluded from any

ORDER
PAGE - 10

consideration of the medical evidence of record in assessing plaintiff's testimony.

The ALJ did not, in any event, reject plaintiff's symptom testimony based solely on an absence of supportive objective evidence or based on inconsistent medical evidence. Considering the ALJ's assessment as a whole, and as further addressed below, the Court finds substantial evidence support for the ALJ's conclusion. *See, e.g.*, *Colter v. Colvin*, No. 11-57005, 2014 U.S. App. LEXIS 2048 at *4-5 (9th Cir. Feb. 3, 2014) (where claimant alleged ALJ improperly disregarded her treating physicians' diagnoses of somatoform disorder and failed to consider that disorder in assessing her credibility, the Court found claimant's "own testimony [was] undermined and discredited by both medical opinion testimony and her own description of her daily activities, notwithstanding any consequence Somatoform disorder would have had on the assessment of her credibility."; also noting the claimant's testimony as to certain symptoms were "unsupported by several tests" and concluding the ALJ's assessment of the symptom testimony was adequately supported by substantial evidence).

B.  Inconsistencies

The ALJ found the record to show inconsistencies in plaintiff's presentation and reports. (AR 17-18.) Treating provider Dr. Steven Overman added the following addendum to a September 2010 treatment note:

> At the end of the visit, she mentioned as an aside that she was applying for Social Security Disability. I discussed this directly with her and told her this was a "disconnect" with the overall impression that she had given as to how she is doing. She says she still has two hours of morning stiffness and cannot work with her current symptoms.

(AR 332.) In November 2010, Dr. Ni noted that, while records from three physicians state plaintiff has an inflammatory condition of unknown cause and is rheumatoid factor negative, plaintiff stated

"with confidence today in our interview that she has rheumatoid arthritis ([RA]) confirmed by lab test." (AR 347 ("per chart note, one doctor speculates she has had an inflammatory response to her breast implants while another believes it may be a post-partum related inflammatory response").) Dr. Ni also took note of Dr. Overman's observation of a "disconnect." (AR 347-48 ("Also, interestingly, in her last appointment in Sept 2010, she was feeling better and then told her doctor she would be filing for disability. He notes that her filing for disability goes against her presentation that day."))

The ALJ additionally noted that, in April 2011, plaintiff told one provider her medications were not effective, while she told another provider they were effective and had a "mostly normal examination[.]" (AR 18 (citing AR 358 (April 8, 2011: plaintiff reported to Dr. Overman her frustration with continued symptoms and lack of improvement, that she had been taking Plaquenil and Mobic without apparent benefit, and was on gabapentin, Prozac and Oxycodone as needed) and AR 414-15 (April 11, 2011 visit with primary care provider Dr. Sarah Rice: "She continues to use oxycodone TID for pain and without it she feels terrible. She also takes mobic daily which she thinks really helps."))

Plaintiff cites to other examples of inconsistencies identified by the ALJ (*see* AR 17) as reflecting merely reports of symptoms despite the lack of objective evidence and explained by her somatoform disorder. She describes the alleged "disconnect" as reflecting her waxing and waning symptoms, and her reporting regarding an RA diagnosis as no more than confusion on her part, and explained by the fact her doctors have told her she has sero-negative arthritis and possible early stage RA. (*See* AR 294, 331-32, 416.)

In assessing a claimant's symptom testimony, an ALJ may engage in "ordinary techniques of credibility evaluation," such as a claimant's reputation for truthfulness and inconsistencies in

testimony, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), inconsistencies in reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), and a tendency to exaggerate, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Notably, the ALJ in this case did not rely only on his own interpretation of the evidence as reflecting a disconnect or inconsistency between the evidence and claimant's reporting. He cited to such interpretations as rendered by plaintiff's own treating provider and an examining psychiatrist. The ALJ's reliance on this evidence was appropriate and his interpretation rational. Moreover, even if all of the examples of inconsistencies in plaintiff's symptom reporting were not equally compelling, the ALJ's consideration of the inconsistency evidence as a whole retains the support of substantial evidence. *See Carmickle*, 533 F.3d at 1162 (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless).

C. <u>Daily Activities</u>

The ALJ found plaintiff's independent daily activities inconsistent with her allegations of disabling functional limitations. (AR 18 and AR 15.) Prior to the DLI, plaintiff cared for her daughters and pets and stated she could lift twenty pounds; reported swimming on an inconsistent basis in July 2010; could do her activities of daily living and self-care in November 2010; and began exercising more in November 2011. (*Id.*) A month after her DLI, plaintiff began doing hot yoga and going to church; in 2014, she "was able to actively help prepare for her niece's wedding"; and, by May 2014, she was caring for her mother, who was undergoing cancer treatment. (*Id.*) The ALJ observed that, while some of the activities cited occurred after the DLI, "she was reporting to the agency contemporaneously that she was much more impaired – a fact that decreases her credibility." (AR 18 (internal citations to record omitted).)

Plaintiff denies her daily activities either contradict her testimony or involve functions

ORDER
PAGE - 13

transferable to a work setting. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]"). She contends the ALJ's decision lacks an explanation as to how the activities would be inconsistent with her claim she would not be a reliable employee, stating they were performed at her own pace, on good days, not on a sustained basis, and, in some cases, for brief periods before abandoned. (*See* Dkt. 9 at 7-8.) Plaintiff does not, however, demonstrate the ALJ failed to reasonably consider or rationally interpret the evidence of plaintiff's activities as contradicting her asserted degree of impairment.

D.  Treatment Compliance

The ALJ found plaintiff had not fully complied with recommended treatment. Plaintiff discontinued medications after her breast implant removal and inconsistently reported the effectiveness of medication. (AR 18.) The ALJ found her lack of compliance most noticeable after the DLI, noting, in February 2013, she was encouraged to stop taking narcotics and start exercising, but ignored that advice, and, in September 2013, was taking higher than recommended doses of benzodiazepines and declined advice to consider SSRIs. "Again, while this behavior occurred after the [DLI], it still lessens the claimant's credibility." (*Id*.)

Plaintiff maintains her use of narcotics and benzodiazepines confirms the severity of her symptoms, and that her reluctance to take an SSRI reflects her limited insight into her problems and omits consideration of her testimony she previously had a seizure while taking such medication (*see* AR 50). She states her mental and physical experience of pain interferes with her ability to exercise, and that the ALJ's reliance on both her failure to exercise and her activity of exercising makes little sense.

An ALJ appropriately considers an unexplained or inadequately explained failure to seek

treatment or follow a prescribed course of treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, even if plaintiff's interpretation of the evidence can be deemed rational, the ALJ's interpretation is at least equally rational and must be upheld. (*See*, *e.g.*, AR 368 ("I discussed with her, that in my experience, patients with fibromyalgia/chronic widespread pain syndrome do not benefit from narcotics and actually fail to improve. Due to her reluctance to start exercising or consider reduction in narcotics, I recommend that she consider eval by PRA – their sole interest is fibromyalgia."); AR 539 ("I talked to her about risks involved in high dosages including addiction and tolerance. Currently patient is taking doses higher than recommended and I do not support increases of those medications through out [sic] her treatment. I agree with Dr. Pepple decreasing her amount of medication prescribed last appointment. I have encouraged patient to start an SSRI but, she is very resistant to the idea because she is afraid it will take over her mind. I tried to educate patient about the benefits of using SSRI vs benzos. I don't think her medication plan at this point is going to be helpful in the long run and will continue to work with patient on trying other things than increasing her benzodiazepines and more likely to continue to decrease these medications."; "I think it's important to work with her on: making sure she is getting some exercise, sleep hygiene, and learning ways to continue to live her life with fibromyalgia."))

E.  <u>Secondary Gain</u>

The ALJ, finally, found a suggestion in the record that plaintiff's application for disability benefits was for secondary gain. (AR 19.) He pointed to her treating provider's September 2010 finding of a disconnect between her overall impression and her intention to apply for disability. The ALJ noted: "Specifically, the claimant did not report difficulties until after her provider mentioned this disconnect." (*Id.* (citing AR 332).) The ALJ also noted plaintiff's testimony "that

ORDER
PAGE - 15

she had wanted to stay at home with her younger daughter in order to be a better mother, which suggests that she may have stopped working for reasons unrelated to a disability." (*Id*.)

Plaintiff points to her testimony and other evidence of record as supporting her contention that, while she did originally stop working in order to stay home with her newborn daughter, she nonetheless subsequently became disabled and had not been able to function as a stay at home mom as planned. As explained at hearing, she relied extensively on her older daughter to care for younger daughter. (*See* AR 41-42.)

"'Secondary gain' means 'external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits.'" *Burrell v. Colvin*, 775 F.3d 1133, 1139-40 n.5 (9th Cir. 2014) (quoting *Dorland's Illustrated Medical Dictionary* 721 (29th ed.)). While a single weak example of such evidence would not, standing alone, suffice to support an adverse determination, an ALJ may consider a claimant's motivation for secondary gain. *Id*. at 1139-40.

The Court agrees with plaintiff that, without more, the evidence as to why she stopped working would not provide sufficient support for a finding of secondary gain. However, considered in conjunction with the evidence from plaintiff's provider, the Court finds the inference drawn by the ALJ reasonable.

F. <u>Medication Side Effects</u>

Plaintiff avers error in the ALJ's failure to consider the side effects of her medications. As plaintiff observes, the ALJ must consider "type, dosage, effectiveness, and side effects of any medication" taken to alleviate pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); SSR 96-7p (same). Plaintiff points to *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1988), as holding that, where an ALJ "chooses to disregard a claimant's

ORDER
PAGE - 16

testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)."

Plaintiff points to her medication side effects as including drowsiness, brain fog, memory loss, nervousness, hyperactivity, anger, mood swings, and anxiety. (Dkt. 9 at 10 (citing AR 53, 246, 261).) The records cited in support of this contention largely reflect side effects from medications she was "currently" taking in late 2013 and mid-2014, well after the expiration of the DLI. (*See* AR 246 (reporting nervousness with Tramadol in December 2013), and AR 260-61 (reporting, in May 2014, drowsiness with Clonazepam, brain fog and memory loss with Gabapentin, hyper anxiety with Hydrocodone, drowsiness with Hydroxyzine, and anxiety with Tramadol).) The ALJ, in any event, explicitly noted his consideration of these records and a number of the symptoms addressed therein, including fatigue and difficulty sleeping, cognitive problems, memory loss, and anxiety. (AR 17 (citing AR 230-40, 219-26, and 244-49).) The ALJ also discussed evidence associated with plaintiff's use of medications, including her inconsistent reporting as to effectiveness, her decision to discontinue and reduce certain medications, and her failure to follow treatment recommendations regarding medications. (*See* AR 18.)

The ALJ did not address plaintiff's testimony regarding medication side effects prior to her DLI. Plaintiff testified that, prior to her DLI, she was "having a lot of weird reactions" to medications, and gave the example that Tramadol made her "super hyper and very angry very quickly" and her "mood swings were all over the place[.]" (AR 53.) (AR 261.) The ALJ did not describe this or other testimony offered by plaintiff at hearing. He outlined her allegations in her application and in subsequent reports, and stated plaintiff "reiterated her allegations at the hearing in February 2015" and testified she remained unable to work due to her pain. (AR 17.)

ORDER
PAGE - 17

Plaintiff maintains reversible error is established based on the ALJ's failure to mention and specifically discredit the medication side effects. She does not address the relevant medical record or offer an explanation as to how the side effects served as a contributing factor to her inability to work. (*See, e.g.*, AR 315, 324, 332 (in June 2010, plaintiff reported that Tramadol "amps her up but helps with the discomfort", but she had stopped taking Tramadol by September 2010); AR 344 (in November 2010, plaintiff reported "Tramadol did not really help but made her edgy, moody, hot and sweaty. So, now she is on oxycodone, which also makes her moody but on a much lower level.")) Nor does plaintiff demonstrate error in the multiple specific, clear, and convincing reasons for not fully accepting her testimony, or in the ALJ's assignment of great weight to all of the medical opinions of record.

The Court finds this case distinguishable from *Varney*, wherein an ALJ rejected a claimant's subjective pain and symptom testimony with a single sentence: "The claimant's reports of subjective symptoms and limitations are exaggerated over what is corroborated by the weight of the objective medical evidence, and to this extent, her reports are not credible." *Varney*, 846 F.2d at 584-85. The Court further finds substantial evidence support for the ALJ's decision and no reversible error established in the ALJ's rejection of any testimony as to "the subjective limitations of side effects . . . in fact associated with [plaintiff's] medication(s)." *Id*. at 585. *See, e.g.*, *Roquemore v. Comm'r of SSA*, No. 08-56894, 2010 U.S. App. LEXIS 4971 at *2-3 (9th Cir. Mar. 9, 2010) ("Roquemore argues that the ALJ erred by failing to consider the side effects of his medications. However, Roquemore fails to identify any objective evidence of side effects. He points only to his own subjective claims of drowsiness and decreased concentration. Nothing in the record suggests that Roquemore's ability to work was affected by his medications. Therefore, the ALJ was not required to include a discussion of side effects."); *Bayliss v. Barnhart*, 427 F.3d

1211, 1217 (9th Cir. 2005) (finding no error in ALJ's failure to explicitly address the drowsiness side effect of a claimant's medications where "[i]n making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints."; "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") (citing SSR 96-8p); *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (no error where question to VE did not include information about side effects because "[t]here were passing mentions of the side effects of . . . medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work"); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work but failed to do so).

<u>Lay Testimony</u>

Plaintiff argues that, because he linked his rejection of the lay witness statements to the rejection of her testimony and failed to offer sufficient reasons for rejecting that testimony, the ALJ should also be directed to reconsider the lay witness statements on remand.  (*See* AR 19.) The Court, however, finds no error in the ALJ's rejection of either plaintiff's testimony or the similar testimony of the lay witnesses.  The ALJ appropriately provided germane reasons for rejecting the lay witness statements in this case. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (ALJ can reject the testimony of lay witnesses only upon giving germane reasons), and *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

ORDER
PAGE - 19

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 11th day of April, 2017.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 20